632 A.2d 1336

Henry A. AHNERT, Jr., Robert M. Ahnert, W. Peter Ahnert, Harry F. Lee, Henry A. Ahnert, III, Robert M. Ahnert, and Henry F. Lee, Trustees U/I/T of Henry A. Ahnert, and Harry F. Lee, Trustees U/I/T of Robert M. Ahnert, and Green Penn, Inc.

v.

RANK AMERICA, INC., and Rank-Ahnert, Inc., Leslie Bond and Terence H. North.

Appeal of RANK AMERICA, INC., and Rank-Ahnert, Inc.

Superior Court of Pennsylvania.

Argued April 14, 1993.

Filed Nov. 5, 1993.

506

Weston Hanscom, Chicago, IL, for appellants.

David Hyman, Philadelphia, PA, for appellees.

Before CAVANAUGH, BECK and JOHNSON, JJ.

JOHNSON, Judge.

Rank America Inc. and Rank-Ahnert Inc. (collectively "Rank") bring this interlocutory appeal from an order of the Court of Common Pleas of Monroe County which granted the motion of Henry A. Ahnert, Jr., and others (collectively the "Shareholders") to coordinate Rank's action in Philadelphia County with the Shareholders' action in Monroe County. The order transferred the Philadelphia proceeding to Monroe County. The appeal is properly before us, pursuant to Pa. R.A.P. 311(c). We are asked to determine whether the two actions coordinated involve a common question of law or fact, or whether they arise out of the same transaction or occurrence, so as to allow coordination pursuant to Rule 213.1 of the Pennsylvania Rules of Civil Procedure. Finding neither, we conclude that Rule 213.1 may not be utilized and the order which sought to coordinate these two actions in Monroe County must be reversed.

The Monroe County action, filed in May 1991, concerns the validity of a July 1990, Settlement Agreement which purports to release the Monroe County Shareholders from an indemnification claim advanced by Rank. The Shareholders seek to have the Settlement Agreement declared valid and enforceable, while Rank seeks to have the Agreement declared void based upon alleged breach of fiduciary obligations and fraudulent misconduct.

The Philadelphia action was brought by Rank in May 1992 seeking a declaration that if Rank suffers losses in connection with a third proceeding pending in Dauphin County, then the Monroe Shareholders must indemnify Rank as a result of an

alleged breach of material representations and warranties set forth in a March 1988, Acquisition Agreement. The issues in the Philadelphia action are contractual, whereas the issues in the Monroe County action depend upon principles of fraud and breach of fiduciary obligations.

In ordering the coordination of the Monroe and Philadelphia claims, the Monroe County trial court declared:

> Pursuant to Pa.R.C.P. 213.1(c)(1), we find that the record supports that the two actions have predominant and significant common questions of fact and law. Specifically, the scope of the Maryland Claim, the enforceability of the Settlement Agreement and the effect of the Acquisition Agreement are interrelated for purposes of these two actions.

Opinion, O'Brien, J., September 28, 1992, pages 5–6. The trial court goes on to write:

> In the Monroe County Action, we must determine whether the Settlement Agreement is enforceable and whether the Agreement encompassed a release, waiver and discharge of all claims arising out of the Maryland allegations. If we find that the Settlement Agreement is enforceable and that the scope of the claims waived involves all claims arising out of the Maryland transactions, then the Philadelphia County Action would be moot. The subsequent waiver rights in the Settlement Agreement would control the former rights granted in the Acquisition Agreement.... In the case at bar, the predominant and significant common question of law and fact arises from litigating the extent of the Maryland Claim waiver and the enforceability of the Settlement Agreement over the Acquisition Agreement.

*Id.* at 7, 8.

We do not understand how the "scope" of the Maryland Claim, the "enforceability" of the Settlement Agreement, and the "effect" of the Acquisition Agreement constitute common factual or legal questions, even though they may be, as the trial court suggests, "interrelated." By the same token, we cannot agree that finding one document enforceable in Monroe

County, thereby rendering "moot" separate questions raised in Philadelphia County, permits a conclusion that the same questions would have been raised in both actions.

Moreover, we find the only case relied upon by the trial court in resolving these issues to be inapposite. In *Richardson Brands, Inc. v. Pennsylvania Dutch Co., Inc.*, 405 Pa.Super. 202, 592 A.2d 77 (1991), we had occasion to consider the applicability of Pa.R.C.P. 213.1 in a case where the parties brought separate suits in Philadelphia and Cumberland counties arising out of the same contract. The Cumberland County action alleged breach of contract (failure to make royalty payments), while the earlier-filed Philadelphia action was based on an alleged breach of a covenant not to compete. In ruling that Rule 213.1 was applicable when raised in the Philadelphia proceeding, we held that the Cumberland County court had concluded that the issues, relief sought, remedies, and damages were different but stopped short of ruling that common questions of fact were not present. The Philadelphia court was free, therefore, to consider that issue and conclude, *inter alia*, that "the two cases involve the same set of operative facts." We find that to be materially different from the situation here, where the Shareholders seek relief in Monroe County relying on a July 1990, Settlement Agreement and Rank seeks relief in Philadelphia County relying upon a March 1988, Acquisition Agreement.

 The central issue on this appeal is whether the Monroe and Philadelphia actions either (a) involve a common question of law or fact, or (b) arise from the same transaction or occurrence. Pa.R.C.P. 213.1(a). The trial court finds common questions of fact *and* law in the "scope" of the Maryland Claim, the "enforceability" of the Settlement Agreement, and in the "effect" of the Acquisition Agreement upon the rationale that they are "interrelated for purposes of these two actions." Opinion, *supra* at 5–6. We have found no cases, nor does the trial court cite to any, which would hold that the "interrelatedness" of two documents prepared and executed more than two years apart results in the establishment of common questions of either fact or law.

█ It is true that the Shareholders, in their Motion to Coordinate Pursuant to Rule 213.1, filed July 7, 1992 in Monroe County, included Paragraph 15, at page 3 of the Motion, R.R. 97a, stating: This action and the Philadelphia action concern common questions of fact and law. However, there is nothing in the remaining eighteen paragraphs of that motion to support the conclusory averment in Paragraph 15. In their Summary of Argument, the Shareholders proclaim that:

> The criteria for coordination are easily satisfied given that both actions emerge from common sources; *i.e.* the Shareholders' conduct toward Maryland residents and the Agreement.

The trial court did not rely upon the "Shareholders' conduct" to support its belief that common questions of law or fact are present in these two disparate lawsuits. Rank has not agreed, by any statement in its Brief, that both actions arise out of and are related to the Acquisition Agreement. On the contrary, Rank is quite clear in its insistence, on this appeal, that commonality does not exist between these two cases. In its Summary of Argument, Rank sets forth the following:

> In this case, the Monroe County Court erroneously concluded that the Monroe County and Philadelphia County actions involve a common question of law or fact or arise from the same transaction or occurrence. In fact, the two actions are entirely distinct, as the Monroe County action concerns only the enforceability of the July, 1990 Settlement Agreement as it relates to the release of the Maryland Claim, whereas the Philadelphia County action concerns only Rank's entitlement to indemnification under the Acquisition Agreement for losses which may be incurred in the Dauphin County action filed on April 16, 1992. Contrary to the Monroe County Court's assumption, the "Maryland Claim" does not and cannot include the subsequent "Philadelphia Claim."

We find the argument advanced by Rank to be persuasive. We conclude that the trial court committed an error of law in ruling that common questions of fact or law exist insofar as the trial court attempted to rely upon the "scope" of one

matter, the "enforceability" of a second matter, and the "effect" of still a third matter in finding commonality. Accordingly, we reverse the order which granted coordination and remand the case for further proceedings not inconsistent with this Opinion.

Because we conclude that common questions of fact or of law are lacking, we do not reach Rank's second question on appeal concerning the appropriate situs, pursuant to Rule 213.1(d)(2), for the transfer of any proceedings properly coordinated.

Order granting coordination and transferring the Philadelphia proceeding is REVERSED. Jurisdiction relinquished.

BECK, J., files a dissenting opinion.

BECK, Judge, dissenting.

Because I believe that the Monroe County and Philadelphia County actions involve common questions of law and fact, and therefore were properly coordinated, I must dissent.

In March 1988, the parties entered into an Acquisition Agreement through which appellants purchased the assets of Outdoor World Corporation ("OWC") from its shareholders, Henry A. Ahnert, Jr., Robert M. Ahnert, W. Peter Ahnert, Harry F. Lee, Henry A. Ahnert, III, Robert M. Ahnert and Henry F. Lee, Trustees U/I/T of Henry A. Ahnert, Jr., Henry A. Ahnert, Jr. and Harry F. Lee, Trustees U/I/T of Robert M. Ahnert and Green Pen, Inc. ("appellees"). The Acquisition Agreement included provisions which require the appellees to indemnify the appellants against certain claims which might be lodged against OWC as the result of activities pre-dating the Agreement. Several such claims were pending against OWC at the time of the Acquisition Agreement, and were listed and described in Section 12 of the Agreement, relating to the appellees' indemnification obligations. R. 617a–621a.

Eventually, appellants sought indemnification under the Acquisition Agreement for losses arising out of the "Maryland Claim." At the time of the Acquisition Agreement, OWC was under investigation by Maryland's Attorney General for al-

leged unfair or deceptive practices prohibited by Maryland law. By May 1989, the Attorney General had filed a statement of charges against OWC. Pursuant to the indemnification provisions of the Acquisition Agreement, in March 1990, appellants demanded indemnification from appellees for losses "in connection with the proceeding commenced by the Maryland Attorney General concerning allegations regarding marketing practices." R. 349a. The parties compromised the claim for indemnification pursuant to a July 1990 Settlement Agreement.

By March 18, 1991, however, the appellants notified appellees that they would consider the Settlement Agreement to be null and void, due to appellees' alleged fraud and breach of fiduciary obligation. Appellants then reinstated their demand for indemnification under the Acquisition Agreement. In response, appellees filed a declaratory judgment action in Monroe County to enforce the July 1990 Settlement Agreement.

Thereafter, on May 7, 1992, appellants filed their own declaratory judgment action in Philadelphia County, again asserting their right to indemnification under the Acquisition Agreement. The complaint sought indemnification for losses which could arise out of a class action lawsuit filed by Maryland residents against OWC in Dauphin County. Like the proceedings initiated by the Maryland Attorney General, this class action apparently included allegations of unfair and deceptive trade practices. In their Philadelphia County action, appellants alleged that appellees had misrepresented the legality of OWC's business practices, and the nature of the Maryland proceeding, and that these misrepresentations constituted breaches of contract and warranty under the Acquisition Agreement.

In addition, in their Answer/New Matter and Counterclaim filed in the Monroe County action, the appellants alleged that the Settlement Agreement was void due to appellees' fraud and breaches, and that appellants were entitled to indemnification under the Acquisition Agreement.

Appellees filed a motion to coordinate the Monroe and Philadelphia County actions in Monroe County pursuant to Pa.R.Civ.P. 213.1. The Rule provides, in pertinent part:

(a) In actions pending in different counties which involve a common question of law or fact or which arise from the same transaction or occurrence, any party, with notice to all other parties, may file a motion requesting the court in which a complaint was first filed to order coordination of the actions. Any party may file an answer to the motion and the court may hold a hearing.

* * * * * *

(c) In determining whether to order coordination and which location is appropriate for the coordinated proceedings, the court shall consider, among other matters:

(1) whether the common question of fact or law is predominating and significant to the litigation;

(2) the convenience of the parties, witnesses and counsel;

(3) whether coordination will result in unreasonable delay or expense to a party or otherwise prejudice a party in an action which would be subject to coordination;

(4) the efficient utilization of judicial facilities and personnel and the just and efficient conduct of the actions;

(5) the disadvantages of duplicative and inconsistent rulings, orders or judgments;

(6) the likelihood of settlement of the actions without further litigation should coordination be denied....

The comment to Rule 213.1 explains that its purpose is to avoid multiple trials and proceedings, to provide economy to the parties and the judicial system and to avoid the possibility of inconsistent rulings and orders. *See also Lincoln General Ins. Co. v. Donahue,* 151 Pa.Cmwlth. 297, 616 A.2d 1076 (1992).

The trial court in Monroe County granted appellees' motion to coordinate, finding that the two actions involved predominant common questions of law and fact, and arose out of the same transaction or occurrence, i.e., the original Acquisition

Agreement. The appellants timely filed their appeal to this court.[1]

We may reverse the trial court's order of coordination if there was an abuse of discretion. *Richardson Brands, Inc. v. Pennsylvania Dutch Co.*, 405 Pa.Super. 202, 592 A.2d 77 (1991). I agree that the two actions involve common questions of law and fact which predominate, and that the cases properly may be coordinated. However, I would reverse the trial court's order coordinating the actions in Monroe County, because the parties previously agreed to submit to the exclusive jurisdiction of the courts in Philadelphia County.

Section 13.13 of the March 1988 Acquisition Agreement provides:

> *Consent to Jurisdiction.* The parties hereby irrevocably consent and submit to the *exclusive jurisdiction of any Pennsylvania state court or federal court sitting in the county of [Philadelphia], Pennsylvania, over any suit, action or proceeding which arises out of or relates in any way to this Agreement* or any judgment entered in any court in respect hereof, and consents to service of process by registered mail, return receipt requested, or by any other manner provided by Pennsylvania law. The parties hereby waive the right to contest the jurisdiction and venue of the said courts located in Philadelphia, Pennsylvania on the grounds of inconvenience of [sic] otherwise.

R. 32a–33a (emphasis added).

The parties have conceded that both actions arise out of and are related to the Acquisition Agreement. In preliminary objections raising the issue of venue in the Monroe County action, appellants argued that the action "arises out of or relates to the Acquisition Agreement and is therefore subject to the applicable forum selection clause." R. 35a. In their brief to this court and in their Motion to Coordinate, the appellees also allege that the two lawsuits arise from the same

---

1. I note that this interlocutory order is directly appealable as of right under Pa.R.App.P. 311(c), as an order changing venue. *See Richardson Brands, Inc. v. Pennsylvania Dutch Co.*, 405 Pa.Super. 202, 592 A.2d 77, 81 (1991).

transaction and occurrences. Appellees' Brief at 9, 13; R. 97a. Both actions involve the central question of whether or not the appellees remain obligated under the indemnification provisions of the Acquisition Agreement with respect to the Maryland Claim. A secondary common question is whether the appellees' alleged fraud or breach has invalidated the July 1990 Settlement Agreement.

Moreover, the Settlement Agreement is directly related to the Acquisition Agreement and provides a specific solution to problems arising under the Acquisition Agreement; the Settlement Agreement purports to compromise a demand for indemnification under the Acquisition Agreement. Conceptually, the Settlement Agreement could be considered an addendum to the Acquisition Agreement. Therefore, a common question in both the Monroe County and Philadelphia County lawsuits relates to the validity and scope of this addendum. Finally, the legal issues of fraud and breach are common to both lawsuits, as are the factual findings necessary to prove each allegation. Therefore, I believe that coordination of the actions by the trial court was proper.

However, this same circumstance compels the conclusion that the actions must be maintained in *Philadelphia County*, in accordance with the agreement's forum selection clause.[2] I do not see how the effect of the forum selection clause can be ignored. Our supreme court has held that:

The modern and correct rule is that, while private parties may not by contract prevent a court from asserting its jurisdiction or change the rules of venue, nevertheless, a court in which venue is proper and which has jurisdiction should decline to proceed with the cause when the parties have freely agreed that the litigation shall be conducted in

2. Appellees' argument that their Monroe County complaint involved only the July 1990 Settlement Agreement, and that the forum selection clause of the Acquisition Agreement therefore should not apply, is just a smokescreen. Appellees' Brief at 14. Appellees cannot have it both ways. They are correct that the actions involve common questions of law and fact, and may be coordinated. At the same time, however, appellees should not be permitted to escape the application of the forum selection clause where both actions involve the indemnification provisions of the Acquisition Agreement.

another forum and where such agreement is not unreasonable at the time of litigation ... The party seeking to obviate the agreement has the burden of proving its unreasonableness.

*Central Contracting Co. v. C.E. Youngdahl & Co.*, 418 Pa. 122, 133–34, 209 A.2d 810 (1965).

The trial court dismissed the forum selection clause by stating that "in view of Philadelphia's well publicized Court congestion and delay, it would be several years before this civil proceeding would reach trial," and that it therefore would be "unreasonable" to give effect to the forum selection clause. Opinion on Preliminary Objections at 4. I believe this was an abuse of discretion. If we were to adopt this reasoning, we would be holding that parties could never agree to choose Philadelphia County as the forum for disputes arising out of duly executed contracts. I cannot agree with the trial court's opinion that any lawsuit filed in Philadelphia County automatically will "seriously impair plaintiff's ability to pursue their [sic] cause of action." *Id.*[3] I would hold that appellees, who seek to obviate the forum selection clause, did not meet their burden to prove that the clause is unreasonable. *Central Contracting, supra.*

I note that the Monroe County court, in which the motion to coordinate was filed, had the authority to coordinate the actions and transfer them to Philadelphia County. Pa. R.Civ.P. 213.1(d)(2). I would reverse the trial court's order insofar as it transferred the Philadelphia County action to Monroe County, and remand for entry of an order transferring both actions to Philadelphia County.

---

3. Appellants point out that the Philadelphia County action appeared on the trial list on November 5, 1992. In any event, delay in the Philadelphia courts certainly existed at the time the forum selection clause was agreed upon, in March 1988, and the parties ostensibly considered this fact in making their agreement.